NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRANI FEIT, INDIVIDUALLY AND AS :
ASSIGNEE OF IRWIN J. FEIT, :
  :
                    Plaintiff, :  Hon. Harold A. Ackerman
        v. :
  :  Civil Action No. 03-2948 (HAA)
GREAT-WEST LIFE AND ANNUITY :
INSURANCE COMPANY, A Colorado :  **OPINION AND ORDER**
Corporation :
  :
                    Defendants. :
  :

Michael J. Epstein, Esq.
Epstein Beirne, P.A.
340 West Passaic Street
Rochelle Park, New Jersey 07662
*Attorneys for Plaintiff*

Michael J. Zaretsky, Esq.
Chorpenning, Good, Carlet & Garrison, Esqs.
1135 Clifton Ave.
Clifton, NJ 07015
*Attorneys for Defendant*

**ACKERMAN, Senior District Judge:**

   This matter comes before the Court on a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 and a motion to dismiss Plaintiff's request for attorney's fees filed by Defendant Great-West Life and Annuity Insurance Company ("Great-West"). For the reasons outlined below, Great-West's motion for summary judgment is GRANTED in part and DENIED in part.

1

*Factual Background*

This action concerns the construction and application of an accidental death benefit clause contained in a life insurance policy issued by Defendant Great-West Life and Annuity Insurance Company ("Great-West"). The deceased, Dr. David Feit ("Dr. Feit"), was a practicing dentist and a member of the American Dental Association ("ADA"). Plaintiff Frani Feit ("Mrs. Feit" or "Plaintiff"), is the surviving spouse of Dr. David Feit and one of two designated beneficiaries of Dr. Feit's life insurance policy. Mrs. Feit is proceeding in this action individually and as the assignee of the rights of Irwin Feit, Dr. Feit's father, the other designated beneficiary of the policy.

The ADA maintained the life insurance benefits at issue, which were available to Dr. Feit under a group term life insurance plan provided by Great-West. Dr. Feit had a $1,000,000 group term life insurance policy at the time of his death and an additional $1,000,000 accidental death benefit. Under the terms of Dr. Feit's insurance policy, in order to receive the accidental death benefit, an insured's death must be the result of a bodily injury that is caused solely by accidental means. Under the policy's terms, Great-West was obligated to pay the additional accidental death benefit only if death occurred within 90 days of an accident, was a direct result of an accident, and was unrelated to any other cause. The accidental death benefit would not be paid if the member's death was in any way connected to a disease, illness, or physical or mental infirmity, including the medical or surgical treatment of any disease or illness.

Dr. Feit died on July 22, 2002 in Rockland County, New York. The cause of death is the central matter of dispute in this case. At the time of his death, Dr. Feit was forty-four years old, did not smoke, and had no history of cardiac disease or illness, other than an elevated cholesterol

level which was controlled with medication. He regularly walked five miles four to five times per week and played basketball on Sundays.

Sometime during the morning of July 22, 2002, Dr. Feit's car drove off the southbound lane of a highway in Rockland County and crashed into and drove through the guardrail, causing damage to ten feet of the rail. The vehicle then went down a 670-foot grassy slope, struck a chain-linked fence, and stopped at the Spook Rock Industrial Park (the "Park"). The car damaged a sign and part of the fence, and parts of the vehicle were scattered throughout the car's path. The location of Dr. Feit's car was reported to police by the Park's construction manger at approximately 12:11 PM. Police were called to the scene and found Dr. Feit deceased, in the front seat area of the car, clutching his chest and biting his shirt. Dr. Feit did not appear to have worn a seat belt, and the air bags were not deployed. According to the report of the investigator for the County of Rockland Medical Examiner's Office, it looked as though Dr. Feit appeared to have "bounced around" inside the car. The car was totaled in the crash. (Aff. of Gina Goodreau ("Goodreau Aff."), Ex. I at 2.)

After learning about the crash, Mrs. Feit and Dr. Feit's dental assistant, Joan Van Peenen, went to the Rockland County Medical Examiner's Office to identify Dr. Feit's body. Mrs. Van Peenen was present when Mrs. Feit spoke to the medical investigator. The substance of Mrs. Feit's statements to the investigator is hotly debated, and Mrs. Feit offers Mrs. Van Peenen's certification to support her version of the statements. According to Mrs. Feit, in response to the investigator's questions, Mrs. Feit admitted that Dr. Feit "was a person who tended to sweat profusely from time to time . . . and that he occasionally complained about back pain in the past, which [she] believe[d] was related to his work." (Certif. of Michael J. Epstein ("Epstein

3

Certif."), Ex. A ¶ 7.) According to the medical investigator's report, Mrs. Feit "related her husband had casually complained of chest and back pain with profuse sweating about one week" prior to the crash. (Goodreau Aff., Ex. I at 3.) Mrs. Van Peenen corroborates Mrs. Feit's assertion to the medical investigator that Dr. Feit did not suddenly acquire these symptoms prior to his death.

The autopsy results and death certificate indicated that Dr. Feit died from a "myocardial infarction, old due to atherosclerotic obstruction of coronary arteries." (Goodreau Aff., Ex. G at 4.) The autopsy results also revealed an atherosclerotic obstruction in both coronary arteries, which reached a maximum degree of approximately fifty percent, and patches of thinning in the myocardium. There is no mention in the report of any examination of Dr. Feit's head or nervous system.

The beneficiaries submitted claim forms to Great-West in August 2002, seeking the full $2,000,000 in available benefits. Great-West replied by letter dated August 15, 2002, enclosing payment of the beneficiaries' respective shares under the life insurance policy, and stating that the accidental death claim was rejected because Mr. Feit's death certificate listed "natural cause," rather than accident, as the cause of death. Great-West further stated in the letter that it would reconsider the accident benefit portion of the claim if additional proof was submitted. Mrs. Feit responded to Great-West with copies of the autopsy report, accident report, EKG report from Dr. Feit's cardiologist, and correspondence from Dr. Feit's car insurance company indicating that his vehicle was totaled in the crash. Great-West submitted this information to a Great-West consulting physician, who rendered a report on October 30, 2002. The consulting physician's report reaffirmed the autopsy finding and stated that it can be "reasonably inferred in the absence

of other explanations for the insured's demise that complications of the [myocardial infarction] precipitated the insured's death . . . . As such, there exists no support for the assertion of accidental death." *(Id.)*

On October 31, 2002, Great-West's claim analyst wrote to Mrs. Feit again rejecting the accidental death claim, citing to: (1) Dr. Feit's death certificate, which stated the manner of death as "natural cause"; (2) the autopsy report, which supports the finding of death due to natural causes; (3) the autopsy report's absence of any findings of bony fractures or trauma; and (4) the accident report's citation of "heart attack" as the cause of death. (Goodreau Aff., Ex. L.)

Mrs. Feit commenced this suit on May 15, 2003 in the Superior Court of New Jersey, Passaic County. Great-West subsequently removed this case to District Court pursuant to diversity jurisdiction. Mrs. Feit's original complaint contained four counts. She voluntarily withdrew two of the counts.[1] Thus, the only remaining claims before this Court are for breach of contract ("Count I") and breach of the implied covenant of good faith and fair dealing ("bad faith" or "Count II").

During discovery, Mrs. Feit provided pictures of the crash and named two expert witnesses, whose depositions were taken by Great-West. Mrs. Feit's experts were Dr. Arthur Fisch, a cardiologist, and Dr. Duc V. Duong, a medical examiner. The reports of both experts attest that, given the circumstances of the crash, the manner in which the body was found, Dr. Feit's medical history, and the findings of the autopsy reports, Dr. Feit's atherosclerotic obstruction did not contribute to his death.

---

[1] Plaintiff's original complaint included Count III (unjust enrichment) and Count IV (claiming the insurance policy was either unconscionable, unenforceable, or in violation of New Jersey law).

*Analysis*

**I.        Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment may be granted only if the pleadings, supporting papers, affidavits, and admissions on file, when viewed with all inferences in favor of the nonmoving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987). An issue is "genuine" if a reasonable factfinder could possibly hold in the nonmovant's favor with regard to that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it influences the outcome under the governing law. *Id.* at 248.

At the summary judgment stage, a court may not weigh the evidence or make credibility findings – these tasks are left to the factfinder. *Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1230 (3d Cir. 1993). Therefore, to raise a genuine issue of material fact, "'the [summary judgment] opponent need not match, item for item, each piece of evidence proffered by the movant,' but simply must exceed the 'mere scintilla' standard." *Id*; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant].").

As a federal court sitting in diversity, this Court must apply New Jersey substantive law, as determined by the New Jersey Supreme Court, to both claims. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938).

## II.     Breach of Contract

Under Count I of the Complaint, Mrs. Feit argues that Great-West breached the accidental death benefits provision of the insurance contract by refusing to pay her the proceeds under the benefit.  Great-West moves for summary judgment dismissing such claim, asserting that Mrs. Feit has not carried the burden of proving a prima facie case for accidental death benefits.  Due to the numerous disputed facts in this case, Great-West's motion for summary judgment must be denied.

Under New Jersey state law, in accidental death benefit cases, the burden is on the plaintiff to prove by a preponderance of the evidence that an accident, as defined by the policy, resulted in the death of the insured.  *Shopp v. Prudential Ins. Co.*, 115 N.J.L. 162, 165, 178 A. 724, 725 (N.J. 1935); *Kresse v. Met. Life Ins. Co.*, 111 N.J.L. 474, 477, 168 A. 634, 635 (N.J. 1933); *Magich v. John Hancock Mut. Life Ins. Co.*, 32 N.J. Super. 33, 37-38, 107 A.2d 665, 667 (App. Div. 1954).  The initial claim is deemed sufficient if plaintiff provides some reasonable proof of death by accidental means.  *McNamee v. Met. Life Ins. Co.*, 137 N.J.L. 709, 712, 61 A.2d 271, 273 (N.J. 1948) (citing *Cohen v. Met. Life Ins. Co.*, 144 F.2d 748, 750 (3d Cir. 1944)). The proof submitted to sustain a claim need not contain as much detail as is needed for trial. Whether the death resulted solely by accidental means and falls within the scope of the policy is a determination for the jury.  *Id.*

Under the Great-West policy, the insured's beneficiary will only recover proceeds under the accidental death benefit if the beneficiary shows that: (1) the insured sustained a bodily injury; (2) caused solely by accidental means; (3) the death was the direct result of the accident; and (4) the death was unrelated to any other cause.  (Goodreau Aff., Ex. A at 104R-7.)

Additionally, the benefit is not payable if "death is caused by or in any manner or degree connected with . . . any form of disease or illness or physical or mental infirmity." *Id.*

Great-West's argument is largely based on negating the deposition testimony of Mrs. Feit's expert witnesses. Great-West contends that these "paid experts" essentially use speculation and conjecture to "second-guess" the autopsy results. However, this type of argument does not lend itself to summary judgment analysis, as "the matter of weighing the credibility and persuasiveness of expert opinion is the unique function of the trier of fact." *Speyer, Inc. v. Humble Oil & Refining Co.*, 403 F.2d 766, 770 (3d Cir. 1968); *see also Suarez v. Mattingly*, 212 F. Supp. 2d 350, 353 (D.N.J. 2002) (explaining that it is the unique function of the jury to accept the medical opinion it finds more persuasive); *Rubanick v. Witco Chem. Co.*, 242 N.J. Super. 36, 48, 576 A.2d 4, 10 (App. Div. 1990) (finding that a jury is entitled to determine the weight, credibility, and probative value of expert testimony). Accordingly, it is inappropriate for this Court to attempt to assess the weight and credibility of the expert testimony in connection with this motion.[2]

Great-West further suggests that the facts in *Shopp v. Prudential Insurance Company* are similar to this case. In *Shopp*, a beneficiary sought to recover accidental death benefits under the deceased's insurance policy. 115 N.J.L. at 163, 178 A. at 725. The deceased, a twenty-year-old man, was observed sitting at the edge of a swimming pool by a friend who then departed. Upon the friend's return a few minutes later, he found Shopp face down at the bottom of the deep end of the pool. 115 N.J.L. at 164, 178 A. at 725. No one saw or knew how Shopp ended up the

---

[2] In so finding, the Court expresses no opinion on the reliability of the opinions offered by Mrs. Feit's experts.

8

pool. *Id.* Evidence showed that there was a cut and bruise on the deceased's face, which was not apparent before the deceased entered the pool. *Id.* The physician who performed the examination testified that the young man did not die from abnormal body functions or disease, but from external causes. *Id.* The doctor did not know whether this death was caused by accidental or other means. *Id.* There was further evidence that the deceased's heart and lungs were examined two years prior to his demise and were found to be normal. *Id.* Furthermore, the county physician testified that drowning was not the cause of death. 115 N.J.L. at 165, 178 A. at 725. In his opinion, the "death was caused by acute cardiac dilatation, probably brought on by exertion." *Id.* The court found that the plaintiff in *Shopp* did not meet her burden of proving that the death resulted from an accidental cause within the policy. *Id.*

Though citing this case in its brief, Great-West nevertheless fails to explain why *Shopp* is applicable to the instant case. Mrs. Feit argues that Great-West's reliance on *Shopp* is misplaced for the following reasons: (1) the plaintiff in *Shopp* failed to produce any expert testimony as to what caused the insured to die and failed to produce evidence to explain how the insured got into the pool; and (2) although the plaintiff argued that the insured died from head injuries (evidenced by the cut on his face), the plaintiff failed to provide any evidence to connect the injury to the cause of death. Mrs. Feit asserts that, unlike the insured in *Shopp*, whose injury was unexplained, it is undisputed that Dr. Feit was in a serious motor vehicle crash. (Pl's Mem. Opp'n Mot. Summ. J. 22.) Also, Mrs. Feit offered two expert witnesses who opined that Dr. Feit did not die from a cardiac condition, but rather suffered from an injury to his neck and head. (*Id.*) Mrs. Feit further claims that the autopsy was based on incomplete information, due to the lack of a detailed examination of the head or neck. (*Id.* at 23.) Lastly, Mrs. Feit argues that the

9

cause of death is a disputed issue of material fact. (*Id.* at 22-23.)

As stated above, the Court is not to make determinations of fact. *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. It is the factfinder's responsibility to weigh the evidence and determine the credibility of the testimony. *Id.* This Court finds that the cause of Mr. Feit's death is a hotly-contested, genuine issue of material fact. Viewing all the inferences in favor of the non-moving party, a reasonable jury could find, based on the expert testimony, that Dr. Feit died from complications due to the crash rather than a heart condition.

Likewise, there is a genuine dispute as to whether a cardiac condition caused Dr. Feit's death. The medical investigator noted that it appeared from his positioning inside the vehicle that Dr. Feit had "bounced around" the inside of the vehicle during the crash. (Epstein Certif., Ex. F at 2.) Dr. Fisch, Mrs. Feit's expert cardiologist, testified that he believed, with a reasonable degree of medical probability, that a cardiac condition did not contribute to Dr. Feit's death. (Epstein Certif., Ex. J at 32:21-33:23.) Dr. Fisch based his opinion on the fact that (1) there was no evidence of myocardial infarction; (2) none of the obstructions in the coronary arteries exceeded 50%; (3) there was no thrombus or clot, which one would expect to find in the case of an acute myocardial infarction; and (4) the heart was not particularly dilated and there was no history or symptoms of acute infarction or congestive heart failure. (Epstein Certif., Ex. K ¶ 2.) Also, Dr. Feit's past EKG reports were "within normal limits and without any evidence of a prior myocardial infarction." (*Id.* ¶ 3.) Dr. Duong agreed with Dr. Fisch's opinion that 50% blockage in the coronary arteries does not usually cause a heart attack. (Epstein Certif., Ex. L at 2.) Also, in Dr. Duong's opinion, the head and neck were not properly examined, and a proper examination may have shown the injuries that caused Mr. Feit's death. *(Id.)*

Also, a genuine issue of material fact exists as to whether the medical investigator for the examiner's office accurately reported his conversation with Mrs. Feit. The medical investigator stated in his report that Mrs. Feit told him Dr. Feit suffered from back pain and sweating approximately one week prior to his death. (Epstein Certif., Ex. F at 3.) Mrs. Feit and Mrs. Van Peenen deny that Mrs. Feit stated that her husband complained about back pain and sweating just prior to his death. Rather, Mrs. Feit says that her husband had occasional back pain associated with his work and sweated when his air conditioner was broken at the office. If the medical examiner relied on inaccurate statements in the medical investigator's report, any inaccuracy in the investigator's report may have improperly influenced the medical examiner's conclusion that Dr. Feit died from a heart condition.

Viewing all of the inferences in favor of the non-moving party, reasonable minds could differ as to whether Dr. Feit died of natural causes. Because genuine issues of material fact exist as to whether Mr. Feit's death was caused by natural or accidental means, summary judgment is denied on Plaintiff's breach of contract claim.


**III.   Breach of the Covenant of Good Faith and Fair Dealing**

Count II of Mrs. Feit's Complaint alleges that Great-West breached the covenant of good faith and fair dealing in reviewing her accidental death benefits claim. Great-West argues that it performed as required in reviewing the documents provided by Mrs. Feit, and even submitted the materials to a consulting physician for review. For the reasons described below, Great-West's motion for summary judgment on Plaintiff's breach of bad faith claim is granted.

The duty of good faith and fair dealing is implicit in the performance and enforcement of

11

every contract. *Pickett v. Lloyd's*, 131 N.J. 457, 467, 621 A.2d 445, 450 (1993); Restatement (Second) of Contracts § 205 (1981). The New Jersey Supreme Court has defined the duty of good faith and fair dealing as meaning that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the full fruits of the contract." *R.J. Gaydos Ins. Agency v. Nat'l Consumer Ins. Co.*, 168 N.J. 255, 278, 773 A.2d 1132, 1146 (2001) (citing *Ass'n Group Life v. Catholic War Veterans*, 61 N.J. 150, 153, 293 A.2d 382, 383 (1972)); *see also* 13 *Williston on Contracts* 38:15 (4th ed. 2000)). Additionally, in an insurance contract the insurer has a greater duty to act fairly and in good faith. *Clients' Sec. Fund of the Bar of N.J. v. Sec. Title & Guar. Co.*, 134 N.J. 358, 372, 634 A.2d 90, 96 (1993) (citing *Sears Mortgage Corp. v. Rose*, 134 N.J. 326, 347, 634 A.2d 74, 85 (1993)).

An insurer may be liable for breaching the covenant of good faith and fair dealing by the "bad faith" review of an insurer's claim or otherwise. *Pickett*, 131 N.J. at 481, 621 A.2d at 457. The *Pickett* court explained that "in the case of denial of benefits, bad faith is established by showing that no debatable reasons existed for denial of the benefits." *Id.* This rule is now recognized as the "fairly debatable" standard. *See Tarsio v. Provident Ins. Co.*, 108 F. Supp. 2d 397, 401 (D.N.J. 2000); *Hudson Universal, LTD. v. Aetna Ins. Co.*, 987 F. Supp. 337, 342 (D.N.J. 1997). Thus, an insurer did not act in bad faith if a plaintiff's claim was "fairly debatable" at the time the insurance company made the coverage decision. *Tariso*, 108 F. Supp. 2d at 401.

The fairly debatable standard is analyzed with reference to summary judgment standards. A claimant who would not be entitled to summary judgment based on its substantive claim would not meet the fairly debatable standard. *Id.* It follows that if a claimant cannot meet the

12

fairly debatable standard, the claimant is precluded from asserting a bad faith claim against the insurer. *Id.* (citing *Pickett*, 131 N.J. at 473, 621 A.2d at 454; *see also Hudson Universal*, 987 F. Supp. at 342 (following *Pickett* in finding that an insurer will not be held in bad faith unless the plaintiff could have been granted summary judgment on the underlying claim).

Therefore, under the fairly debatable standard, the Court must first determine if the plaintiff could establish a right to summary judgment against Great-West based on her substantive claim. *Id.* If factual issues exist as to whether the plaintiff is entitled to the insurance benefit, the Court must dismiss the bad faith claim. *Id.*; *see also Hudson Universal*, 987 F. Supp. at 342.[3]

As this Court has noted, reasonable minds could differ as to whether Dr. Feit died of natural causes or as a result of the car crash. The medical examiner found that Dr. Feit died of natural causes. Mrs. Feit's experts believe that Dr. Feit died from injuries as a result of the crash. As previously stated, weighing the credibility of expert testimony is a question to be determined by a jury and not by this Court. *Speyer* 403 F.2d at 770; *see also Suarez*, 212 F. Supp. 2d at 353 (D.N.J. 2002); *Rubanick*, 242 N.J. Super. at 48, 576 A.2d at 10 (App. Div. 1990). Moreover, it is the province of a jury to determine whether a death resulted from accidental means and falls within the scope of the insurance policy. *McNamee*, 137 N.J.L. at 712, 61 A.2d at 273.

Furthermore, Great-West's evaluation of Mrs. Feit's claim was reasonable and

---

[3] Once it is established that a plaintiff can meet the fairly debatable standard, the plaintiff must show (1) "the absence of a reasonable basis for denying the benefits of the policy;" and (2) "the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Pickett*, 131 N.J. at 473, 621 A.2d at 453 (quoting *Bibeault v. Hanover Ins. Co.*, 417 A.2d 313, 319 (R.I. 1980)). Because this Court finds that Mrs. Feit's accidental benefit claim was fairly debatable at the time Great-West made its coverage decision, the Court need not reach these additional issues.


understandable in light of the limited evidence provided by Mrs. Feit in response to Great-West's request for supplemental evidence. In support of her claim, Mrs. Feit provided Great-West with only (1) the autopsy report which stated Dr. Feit died of natural causes; (2) the police accident report; (3) Dr. Feit's prior EKG report; and (4) a letter dated August 9, 2002 from the Hanover Insurance Company stating that Dr. Feit's car was totaled in the crash. At the time she provided this information to Great-West, Mrs. Feit did not provide the expert testimony that she now submits as part of her proof that Dr. Feit died by accidental means. Based on the four items Mrs. Feit provided to Great-West in support of her accidental benefit claim, Mrs. Feit's claim was fairly debatable. Because factual issues exist as to whether Mrs. Feit is entitled to the insurance claim, Mrs. Feit's bad faith claim against Great-West must fail as a matter of law.

**IV.    Attorney's Fees**

Mrs. Feit's Complaint requests an award of attorney's fees. Great-West moves for summary judgment dismissing Mrs. Feit's attorney's fee request. For the reasons stated below, Great-West's motion to dismiss Mrs. Feit's request for attorney's fees is granted.

Mrs. Feit's request for attorney's fees is not based upon any specific language in the policy, but rather is premised upon New Jersey Court Rule 4:42-9(a). Under that rule, which deals generally with liability for attorney's fees in civil actions, the relevant subsection provides that no attorney's fees are "allowed in the taxed costs or otherwise, except . . . (6) In an action upon a liability or indemnity policy of insurance, in favor of a successful claimant." N.J. Ct. R. 4:42-9(a)(6). The intention of the rule is to allow "an award for counsel fees only where an insurer refused to indemnify or defend in respect of its insured's third-party liability to another."

*Eagle Fire Prot. Corp. v. First Indem. of Am. Ins. Co.*, 145 N.J. 345, 363, 678 A.2d 699, 708 (1996) (citations omitted); *see also Leonardis v. Burns Int'l. Sec. Servs., Inc.*, 808 F. Supp. 1165, 1187 (D.N.J. 1992) (citing *Guarantee Ins. Co. v. Saltman*, 217 N.J. Super. 604, 610-11, 526 A.2d 731, 735 (App. Div. 1987)).  The Rule does not apply in cases where an insured directly sues its insurer "to enforce casualty or other first-party direct coverage."  *Leonardis v. Burn Int'l Sec. Servs., Inc.*, 808 F. Supp. at 1187 (no recoverable counsel fees because plaintiff's claim concerns first-party coverage) (citing *Guarantee Ins. Co.*, 217 N.J. Super. at 610-611, 526 A.2d at 735); *see also Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F. Supp. 1311, 1320 n.11 (D.N.J. 1990); *Giri v. Med. Inter-Ins. Exch.*, 251 N.J. Super. 148, 151, 597 A.2d 562, 556 (Ch. Div. 1991).  Generally, litigating parties are responsible for their own legal costs.  *Eagle Fire*, 145 N.J. at 363, 678 A.2d at 708.  Thus, attorney fees will not be awarded to an insured in a suit against an insurer where the claim involves direct first-party coverage.

Here, Mrs. Feit asserts both of her claims against Great-West, her husband's primary insurer.  The New Jersey Court Rule is only applicable in cases where the plaintiff has incurred third-party liability to another person.  Because Mrs. Feit's claim is against a first-party insurer, an award of attorney fees is not available.  Thus, summary judgment dismissing Mrs. Feit's request for attorney's fees is granted.

*Conclusion*

For the reasons stated above, it is hereby ordered that Great-West's summary judgment motion is GRANTED in part and DENIED in part. Summary judgment dismissing Plaintiff's breach of contract claim is DENIED. Summary judgment dismissing Plaintiff's bad faith claim and request for attorney's fees is GRANTED with prejudice.

Newark, New Jersey
Dated: October 18, 2005

<div style="text-align:right">s/ Harold A. Ackerman<br>U.S.D.J.</div>