UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRANI FEIT, INDIVIDUALLY AND AS    :
ASSIGNEE OF IRWIN J. FEIT,         :
                                   :
                     Plaintiff,    :    Hon. Harold A. Ackerman
        v.                         :
                                   :    Civil Action No. 03-2948 (HAA)
GREAT-WEST LIFE AND ANNUITY        :
INSURANCE COMPANY, A Colorado      :    **OPINION AND ORDER**
Corporation                        :
                                   :
                     Defendants.   :
                                   :

Michael J. Epstein, Esq.
Epstein Beirne, P.A.
340 West Passaic Street
Rochelle Park, New Jersey 07662
*Attorneys for Plaintiff*

Michael J. Zaretsky, Esq.
Chorpenning, Good, Carlet & Garrison, Esqs.
1135 Clifton Ave.
Clifton, NJ 07015
*Attorneys for Defendant*

**ACKERMAN, Senior District Judge:**

This matter comes before the Court on a motion for reconsideration of this Court's October 4, 2006 Opinion and Order on the motion *in limine* filed by Defendant Great-West Life and Annuity Insurance Company ("Great-West"). Great-West sought to exclude the expert reports and testimony of two experts, Dr. Duc Duong, M.D. and Dr. Arthur P. Fisch, M.D., proffered by Plaintiff Frani Feit ("Mrs. Feit" or "Plaintiff"). This Court denied the motion with respect to the testimony of Dr. Fisch, but granted the motion in part with respect to the testimony of Dr. Duong, excluding that portion of his report and testimony that concluded that Dr. Feit died

1

of a head or neck injury.   For the following reasons, Plaintiff's motion for reconsideration is DENIED.

### *Analysis*

The Third Circuit has held that "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  Local Rule 7.1(i) (formerly Local Rule 7.1(g)) requires the moving party to "set [] forth concisely the matters or controlling decisions which the party believes the [court] has overlooked."  L. Civ. R. 7.1(i).[1]  A motion under Rule 7.1(i) may be granted if: (1) "an intervening change in the controlling law has occurred; (2) evidence not previously available has become available; or (3) it is necessary to correct a clear error of law or prevent manifest injustice."  *Database Am., Inc. v. Bellsouth Adver. & Pub. Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993); *see also North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995).  Relief by way of a motion for reargument is "an extraordinary remedy" that is to be granted "'very sparingly.'"  *In re Lord Abbett Mut. Funds Fee Litig.*, 417 F. Supp. 2d 624, 627 (D.N.J. 2005) (quoting *Yurecko v. Port Authority Auth. Trans-Hudson Corp.*,

---

[1] The full text of Local Civil Rule 7.1(i) reads:
> A motion for reconsideration shall be served and filed within 10 business days after the entry of the order or judgment on the original motion by the Judge or Magistrate Judge. A brief setting forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked shall be filed with the Notice of Motion. Unless the Court directs otherwise, any party opposing a motion for reconsideration shall file and serve a brief in opposition within seven business days after service of the moving party's Notice of Motion and Brief. No oral argument shall be heard unless the Judge or Magistrate Judge grants the motion and specifically directs that the matter shall be argued orally.

.

279 F. Supp. 2d 606, 608 (D.N.J. 2003)); *see also, e.g.*, *NL Indus. Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996); *Maldonado v. Lucca*, 636 F. Supp. 621, 630 (D.N.J. 1986).

Local Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the court before rendering its decision. *Bermingham v. Sony Corp. of Am., Inc.*, 820 F. Supp. 834, 856 (D.N.J. 1992); *Carteret Sav. Bank, F.A. v. Shushan*, 721 F. Supp. 705, 709 (D.N.J. 1989). Rather, the rule permits a reconsideration only when "dispositive factual matters or controlling decisions of law" were presented to the court but were overlooked. *Fellenz v. Lombard Inv. Corp.*, 400 F. Supp. 2d 681, 683 (D.N.J. 2005), citing *SPIRG v. Monsanto Co.*, 727 F. Supp. 876, 878 (D.N.J. 1989), *aff'd*, 891 F.2d 283 (3d Cir. 1989); *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 337 (D.N.J. 1995); *Resorts Int'l v. Greater Bay Hotel & Casino*, 830 F. Supp. 826, 831 (D.N.J. 1992). Ultimately, a motion for reconsideration is not an appeal. It is improper on a motion for reconsideration to "ask the court to rethink what it ha[s] already thought through – rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (quotation omitted).

Still, motions for reconsideration "are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers." *Bowers v. NCAA*, 130 F. Supp. 2d 610, 613 (D.N.J. 2001). Thus, matters may not be introduced for the first time on a reconsideration motion, and absent unusual circumstances, a court should reject new evidence which was available, but not presented when the court made the contested decision. *See, e.g., Yurecko v. Port Authority Trans-Hudson Corp.*, 279 F. Supp. 2d 606, 609 (D.N.J. 2003); *Resorts Int'l, Inc. v. Greate Bay Hotel and Casino, Inc.*, 830 F. Supp. 826, 831 & n.3 (D.N.J. 1992).

In its October 4, 2006 Opinion and Order ("October 4 Opinion"), this Court discussed the factual background of this litigation, and the parties' arguments on the motion *in limine*. This Court refers to and relies upon that prior discussion. In her motion for reconsideration, Plaintiff argues that this Court committed errors of law and fact in excluding Dr. Duong's testimony regarding head and neck injury as the cause of Dr. Feit's death, and committed error in excluding such testimony without the benefit of a *Daubert* hearing on the matter.

I. **The Claimed Failure to Consider Cited Case Law Does Not Warrant Reconsideration.**

Plaintiff asserts that this Court committed error in failing to consider Dr. Duong's testimony regarding head and neck injury as the cause of death as the product of a "differential diagnosis," and specifically claims that this Court erred in failing to reference either of two cases discussing differential diagnosis, *Creanga v. Jardal*, 185 N.J. 345 (N.J. 2005) and *Heller v. Shaw*, 167 F.3d 146 (3d Cir. 1999) in rendering its decision to exclude Dr. Duong's testimony. In response to this argument, the Court simply notes that Plaintiff's informal four-page letter brief in opposition to Great-West's motion *in limine* failed to reference either of these cases, and failed to mention the concept of the "differential diagnosis." Consequently, Plaintiff's argument regarding these "overlooked" cases falls afoul of the admonition to confine the grounds for reconsideration to matters previously presented to, but overlooked by, the court on the original motion. *See Fellenz*, 400 F. Supp. 2d at 683.[2]

---

[2] It should be noted that the *Heller* case was cited twice in the October 4 Opinion.

## II.      "Differential Diagnosis" Does Not Cure Dr. Duong's Report and Testimony

Plaintiff seems to believe that the mere invocation of the term "differential diagnosis" will miraculously provide the scientific methodology to support Dr. Duong's conclusion that head or neck injuries caused Dr. Feit's death, even though Dr. Duong's report and deposition testimony clearly reveal that his opinion lacks any evidentiary foundation or reliable analysis. Nevertheless, on the assumption that the "differential diagnosis" technique was implicitly referenced in Dr. Duong's testimony as to his methodology, this Court has reviewed the case law on "differential diagnosis" techniques and still found Dr. Duong's opinion wanting and inadmissible.

A review of the case law regarding differential diagnosis indicates that such a methodology must be properly supported in order to be reliable and admissible.  In *Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 609 (D.N.J. 2002), the district court noted that "the technique of differential diagnosis has been found to be a reliable technique *when properly performed*." *Id.* (citing *Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 741-42 (3d Cir. 1994) (emphasis supplied)).  No less an august authority than *Creanga*, cited by Plaintiff, cautions that while a trial court may admit a properly supported differential diagnosis into evidence, "that does not mean that simply by uttering the phrase 'differential diagnosis' an expert can make his or her opinion admissible." 185 N.J. at 357.

According to *Magistrini*, "[d]ifferential diagnosis . . . is a standard scientific technique which identifies the cause of a medical problem by eliminating the likely causes until the most probable one is isolated." 80 F.Supp. 2d at 609.  A "reliable differential diagnosis" is "typically performed" after:

5

> physical examinations, the taking of medical histories, and the review of clinical tests, including laboratory tests, and generally is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out, or determining which of those that cannot be excluded is the most likely.

*Id.* (citing *Kannakeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 807 (3d Cir. 1997)). It is within the Court's discretion to exclude an opinion based on differential diagnosis techniques where either: "(1) the expert engaged in very few standard diagnostic techniques by which doctors normally rule out alternative causes *and* the expert offered no good explanation as to why his or her conclusion remained reliable; or (2) the defendant[] pointed to some likely alternative clause and the expert offered no reasonable explanation" as to why he or she ruled out that plausible alternative cause. *Id.* The court in *Creanga* noted that "[i]n rejecting the alternative hypotheses, the expert must use 'scientific methods and procedures' and justify an elimination on more than 'subjective beliefs or unsupported speculation.'" *Creanga*, 185 N.J. at 358. Furthermore, "conclusions based on discredited or improperly performed diagnostic tools are suspect." *Id.*

Defendant points to Dr. Duong's failure to offer a reasonable explanation for eliminating an alternative theory of causation, namely a new fatal arrhythmia caused by Dr. Feit's atherosclerotic obstruction, as evidence that Dr. Duong's analysis does not constitute a valid application of the differential diagnosis technique. Essentially, Dr. Duong admitted at deposition that the coronary atherosclerosis suffered by Dr. Feit could have caused a new fatal arrhythmia, but Dr. Duong rejected that possibility because he deemed it only a "very light chance." (Dep. of Dr. Duc Duong, dated June 25, 2004, 130:17 to 134:17.) Defendant submits that this outright rejection was not supported by valid scientific methods or procedures, and was instead fueled at best by Dr. Duong's subjective belief at best and at worst by Dr. Duong's effort to tailor his

testimony to the Plaintiff's litigation needs.

Even without consideration of Dr. Duong's apparent failure to employ the differential diagnosis technique correctly by effectively ruling out an alternative theory of causation, an examination of Dr. Duong's report and deposition testimony reveals a persistent and unescapable lacuna in Dr. Duong's thesis regarding the probable cause of Dr. Feit's death.  Specifically, the medical examiner's failure to perform an internal examination of the head and neck (i.e. an examination of the brain and nervous system) means that there can be no valid and credible acceptance or rejection of a theory of internal head or neck injury.  Therefore, regardless how Dr. Duong chooses to style his methodology, whether "differential diagnosis" or otherwise, his analysis will never satisfactorily "rule in"or "rule out" head or neck injury because there are no concrete physiological findings supporting this theory, and conversely, no concrete physiological findings which would rule it out.  Without such testable concrete findings of internal head or neck trauma, Dr. Duong's opinion is based on nothing more than "subjective beliefs or unsupported speculation," prohibited even in a "differential diagnosis" model of analysis. *Creanga*, 185 N.J. at 358.  We understand that this uncomfortable truth, which is no fault of the Plaintiff's, offers no resolution of the head or neck injury issue, but absent concrete medical findings of internal injuries to the head or neck , there is no method of making a responsible, credible, reliable opinion that espouses head or neck injury as the cause of death.  In sum, applying the "differential diagnosis" label to Dr. Duong's analysis does not support his opinion with a valid scientific methodology, nor does it render his opinion regarding head or neck injury any more reliable or admissible.

### III. The October 4 Opinion is not Inconsistent With This Court's Opinion Denying Summary Judgment

Plaintiff argues that the October 4 Opinion must be reconsidered because the Court has erroneously concluded that Plaintiff did not carry her burden of proof as to the admissibility of Dr. Duong's testimony on cause of death without consideration of the fact that this Court had previously denied summary judgment despite an attack on the reliability and persuasiveness of Dr. Duong's conclusions and opinion. This argument is specious, inasmuch as this Court's October 18, 2005 Order and Opinion on Summary Judgment noted that while it was "inappropriate for this Court to attempt to assess the weight and credibility of the expert testimony in connection with this motion" a footnote to that same sentence indicates that "[i]n so finding, the Court expresses no opinion on the reliability of the opinions offered by Mrs. Feit's experts." See Opinion and Order dated October 18, 2005, at 8 n.2. Consequently, this Court's October 4 Opinion is in no way inconsistent with the Order and Opinion on Summary Judgment, and Plaintiff's complaint of error is unavailing.

### III. No *Daubert* Hearing Is Necessary

Nothing in Plaintiff's Motion for Reconsideration indicates that this Court's decision not to hold a *Daubert* hearing before deciding the motion was error. While Plaintiff asserts that "a Court cannot have a full record on a differential diagnosis without testimony," (Pl. Br. at 8,) Plaintiff offers no authority for this proposition. The October 4 Opinion referenced ample authority within this Circuit in support of this Court's decision not to hold a *Daubert* hearing before deciding the motion *in limine*. None of the arguments Plaintiff has advanced have pointed to any overlooked authority on this point.

*Conclusion*

For the foregoing reasons, it is hereby ORDERED on this 10th day of October 2006 that Plaintiff's motion for reconsideration is DENIED.


Newark, New Jersey
Dated: October 10, 2006                                               s/ Harold A. Ackerman, U.S.D.J.