UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

FRANI FEIT, INDIVIDUALLY AND AS :
ASSIGNEE OF IRWIN J. FEIT, :
 :
                          Plaintiff, :   Hon. Harold A. Ackerman
      v. :
 :   Civil Action No. 03-2948 (HAA)
GREAT-WEST LIFE AND ANNUITY :
INSURANCE COMPANY, A Colorado :   **OPINION**
Corporation :
 :
                        Defendant. :
 :

Michael J. Epstein, Esq.
Epstein Beirne, P.A.
340 West Passaic Street
Rochelle Park, New Jersey 07662
*Attorneys for Plaintiff*

Michael J. Zaretsky, Esq.
Chorpenning, Good, Carlet & Garrison, Esqs.
1135 Clifton Ave.
Clifton, NJ 07015
*Attorneys for Defendant*

**ACKERMAN, Senior District Judge:**

*Introduction*

      This action came before the Court for a trial by jury. The issue of breach of contract has been tried by a jury and the jury has rendered its verdict in favor of Plaintiff. Before entering judgment, this Court must determine whether to award prejudgment interest and, if so, at what rate.

1

*Analysis*

"[F]ederal courts in diversity cases should apply state law with respect to prejudgment interest." *Jarvis v. Johnson*, 668 F.2d 740, 746 (3d Cir. 1982). The Court has discretion to grant or deny prejudgment interest. *Cooney v. Ritter*, 939 F.2d 81, 89 (3d Cir. 1991) (quoting *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 478 (1988)). Under New Jersey law, an award of prejudgment interest is compensatory because it indemnifies "the claimant for the loss of what the moneys due him would presumably have earned if payment had not been delayed." *Id.* (citing *Busik v. Levine*, 63 N.J. 351 (1973)). Prejudgment interest may be awarded on contract claims. *Id.* (quoting *Meshinsky*, 110 N.J. at 478); *see also North Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 N.J. 561 (1999).

In *Cooney*, the Third Circuit reversed the district court's denial of prejudgment interest. *Cooney*, 939 F.2d at 90. The Court of Appeals disagreed with the district court's finding that the "novelty of the legal issues" presented in that case mitigated against granting prejudgment interest. While novelty is a relevant factor, *see Kislak Co., Inc. v. Geldhazler*, 210 N.J. Super. 255 (Law Div. 1985), Defendant Great-West Life and Annuity Insurance ("Great-West") has not argued that any novelty warrants denial of prejudgment interest here. Neither has Great-West advanced any other reason why prejudgment interest should be denied, other than to point out that such an award is within the discretion of the Court. After careful consideration, and in light of equitable principles and the compensatory purpose of New Jersey law, the Court finds that prejudgment interest should be awarded.

Great-West argues, however, that the prejudgment interest should be calculated pursuant to N.J.S.A. § 17B:27-75(d) (hereinafter the "Statute"). Plaintiff Frani Feit ("Mrs. Feit"), by

2

contrast, contends that N.J.R. 4:42-11(a)(iii) (hereinafter the "Court Rule") governs the calculation. The difference between the application of the Statute versus the Court Rule is not insubstantial here. Under the Court Rule, Mrs. Feit would be entitled to $188,931.50 in prejudgment interest, but under the Statute she would be entitled to $103,340.51. The Court must determine which provision applies to prejudgment interest in the context of this life insurance contract dispute.

  Title 17B is the overarching insurance statute enacted by the New Jersey Legislature. The particular statute at issue, N.J.S.A. § 17B:27-75(d) – providing for the payment of benefits, the additional investigation or denial of a claim, and governing fraud – falls under Chapter 27, entitled "Group Life, Group Health Insurance and Blanket Insurance." N.J.S.A. § 17B:27. The Statute in question declares that "[o]verdue payments shall bear an annual rate of interest equal to the average rate of return of the State of New Jersey Cash Management Fund [the 'Cash Management Fund'] . . . for the preceding fiscal year, rounded to the nearest one-half percent." N.J.S.A. § 17B:27-75(d). By contrast, the Court Rule declares that judgments shall bear the interest rate of the Cash Management Fund *plus 2% per annum.* N.J.R. 4:42-11(a)(ii), (iii). The essence of the dispute, therefore, centers on whether the additional 2% per year should be applied in the instant matter.

  Mrs. Feit argues that application of the Statute, as opposed to the Court Rule, is improper because the Statute refers only to overdue payments and not to judgments. Great-West counters that the New Jersey Legislature has specifically provided a rate of interest to be paid to insured claimants under a group life insurance policy when such payments are "overdue." Great-West ostensibly argues that its failure to pay Mrs. Feit the $1 million due to her under the insurance

3

policy should be considered an overdue payment under the Statute and nothing more.

The Court must first analyze the Statute itself. *See Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001) ("every exercise of statutory interpretation begins with an examination of the plain language of the statute"); *Ross v. Hotel Employees and Rest. Employees Int'l Union*, 266 F.3d 236, 245 (3d Cir. 2001) (same). An analysis of the Statute reveals that the term "judgment" is nowhere employed therein. The Statute repeatedly refers to "overdue payments" and never states that such payments are intended to be equated with judgments. The Court Rule, on the other hand, plainly states that the interest rate calculations apply to judgments, and caselaw convincingly demonstrates that the Court Rule applies to judgments on contract claims, such as the instant action. *See, e.g., Cooney*, 939 F.2d at 89. Neither party directs the Court to any helpful interpretation of the allegedly conflicting Court Rule and Statute. And the Court has not discovered any particularly illuminating caselaw that would help resolve the issue at hand.

The Court is mindful that, if the Court finds no ambiguity in the statutory language, proper statutory interpretation ends with the statute itself. *See Ross*, 266 F.3d at 245. The Court finds that the Statute is not ambiguous. A plain reading of the Statute reveals that it is not intended to apply to judgments, such as in the instant matter. While the Court finds that the Statute at issue here is not ambiguous, an analysis of the legislative history further buttresses the Court's finding as to the Statute's plain meaning.

N.J.S.A. § 17B:27-75 is a relatively new law that only came into existence in its predecessor version, N.J.S.A. § 17B:27-10.1, in May 2001. The New Jersey Legislature passed the new version in August 2005 without changing the content or wording of the relevant subsection. When originally put forth before the 209th Legislature in advance of the year-2000

4

session, Assemblyman Leonard Lance, as the bill's sponsor, provided the following statement:

> This bill requires life insurers to pay benefits under an individual or group life insurance policy within 60 days of receipt of due proof of death; to notify a claimant in writing within 45 days after receipt of such proofs if the claim is contested or denied and shall, upon receipt of any additional information requested from the claimant, pay or deny the contested claim or portion of the contested claim within 90 days of receipt of the additional information requested; and further requires that any uncontested portion of the claim be paid within the original 60-day period.
>
> In addition, the bill requires life insurers to pay interest on an overdue payment of proceeds under a life insurance policy at the rate of 10% per year, compounded monthly. *Under current law there is no such requirement and the payment of interest varies amoung [sic] insurers.*

Introduction Statement of Assemblyman Lance, A. 1740, 209th Leg. (N.J. 2000) (emphasis added).

The Court finds the latter paragraph instructive as to the intended scope of the Statute. Specifically, Assemblyman Lance noted that, "[u]nder current law there is no such requirement and the payment of interest varies amoung [sic] insurers." This statement strongly indicates that the Statute was not intended to conflict with N.J.R. 4:42-11, or any other court rule, because under then-existing law, no interest requirement with respect to overdue payments existed. The fact that N.J.R. 4:42-11 has existed in various incarnations since as early as 1971 further demonstrates that the Court Rule and the Statute are not in conflict because it is presumed that the Legislature knew that the Court Rule existed. The Statute was specifically directed at a perceived lack of uniformity by insurance companies in paying interest on overdue payments. Clearly, the Legislature did not equate overdue payments with judgments rendered by a jury because the interest calculation on such judgments was not lacking in uniformity at the time of

Assemblyman Lance's introduction of the bill, but rather was governed by the Court Rule.

Again, the plain meaning the Statute reveals that it was not intended to apply to judgments as in the instant matter. As a result, the Court finds that prejudgment interest should be calculated pursuant to N.J.R. 4:42-11. Moreover, the legislative history provides additional support to the Court's conclusion.

The parties do not dispute the applicable Cash Management Fund rate and thus the Court adopts Mrs. Feit's calculations utilizing the applicable Cash Management Fund rate plus two percent (2%) per year.[1] As noted above, such calculations yield prejudgment interest in the amount of $188,931.50 to be added to the $1,000,000 base amount due for a grand total of $1,188,931.50. The prejudgment interest reflects the interest accrued through November 1, 2006.

### *Conclusion*

This Court concludes that prejudgment interest should be awarded to Plaintiff and that it should be calculated pursuant to N.J.R. 4:42-11. The Court will enter an appropriate Order for entry of the judgment.


Dated: November 14, 2006
Newark, New Jersey

/s/ Harold A. Ackerman
U.S.D.J.

---

[1] The Court notes that Plaintiff's counsel's letter regarding the proper calculation sets forth the proper rate for 2002 as 2%, inclusive of the additional 2% allowed by the Court Rule. The Court notes that the proper rate for 2002 is 8%, inclusive of the additional 2%. As such, the Court assumes Mrs. Feit's letter contains a typo in this respect. This assumption is buttressed by the fact that the actual dollar figure of $188,931.50 calculated by Plaintiff's counsel reflects the proper interest rate of 8% for 2002, as calculated by the Court.